**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CETA KUNTZSCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEWELL BRANDS INC. d/b/a SUNBEAM PRODUCTS, INC.<br><br>Defendant. | Case No.1:25-cv-1476 (AMN/TWD)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ceta Kuntzsch ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this class action complaint against Defendant Newell Brands Inc. d/b/a Sunbeam Products (the "Defendant" or "Sunbeam"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## BACKGROUND

1. This action seeks to remedy the deceptive and misleading business practices of Defendant with respect to the manufacturing, marketing, and sale of its Oster French Door Countertop Ovens, Model Numbers TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF and TSSTTVFDDAF throughout the United States (hereinafter the "Products" or "Ovens").

2. Defendant sold the Oster Ovens nationwide for a retail price ranging between $140 and $250 through various third-party retailers such as Bed, Bath and Beyond, Costco, Walmart, and

Amazon.[1]

3. The affected Products' doors cannot be opened partially and can slam shut if a consumer's hand slips or does not hold them open. This design defect, which Defendant has acknowledged through a product recall, creates a burn hazard for all users of the Products, resulting in injuries to consumers, including Plaintiff.

4. Plaintiff and other consumers had a reasonable expectation that the Products would not pose a serious burn hazard when used as intended, including the risk that the doors can suddenly and forcefully close, trapping users' hands and arms and causing injury.

5. Defendant, through its own product page, makes affirmative statements regarding the safety and ease of us of its Products. On its website, Defendant advertises " elegant French Doors open with a single pull, making it easy to insert and remove food."[2] Defendant's representations reinforce an impression of safety and convenience, while concealing that the doors may snap shut without warning and burn consumers.

6. Defendant's Product manual similarly fails to address this danger. Although it lists at least twenty-three (23) safety safeguards, none of them relate to the operation or potential hazards of the French-door mechanism.[3]

7. Upon information and belief, neither the Product's packaging, user manual, nor Defendant's advertising materials warn consumers about the possibility of the doors suddenly closing, causing burns to its users.

8. Despite Defendant repeatedly highlighting the convenience and safety of its

---

[1] https://www.cpsc.gov/Recalls/2025/Sunbeam-Products-Recalls-More-than-One-Million-Oster-French-Door-Countertop-Ovens-Due-to-Burn-Hazard (last accessed October 9, 2025)
[2] https://www.oster.com/cooking-appliances/countertop-ovens/oster-manual-french-door-air-fry-oven/SAP_2142004.html (last accessed October 9, 2025)
[3] https://s7d9.scene7.com/is/content/NewellRubbermaid/TSSTTVFDMAF_Grover_IB (last accessed October 9, 2025)

Products, on September 25, 2025, the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of approximately 1.29 million Oster French Door Countertop Ovens (imported and distributed by Defendant Sunbeam Products, Inc.) (hereinafter "the Recall"). The Recall identified a hazard that "the oven's doors can unexpectedly close, posing a burn hazard to consumers." The notice covered models TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF, and TSSTTVFDDAF, sold nationwide from August 2015 through July 2025 for approximately $140 to $250.[4]

9. In addition to the Recall, consumers have been instructed to "immediately stop using" the Products.[5]

10. As shown on its website, Defendant represented which of its products were affected by the Recall[6]:

| **Model Number: TSSTTVFDDAF** | **Model Number: TSSTTVFDDG** |
|---|---|
|   |   |
| **Model Number: TSSTTVFDMAF** | **Model Number: TSSTTVFDXL** |

[4] https://www.cpsc.gov/Recalls/2025/Sunbeam-Products-Recalls-More-than-One-Million-Oster-French-Door-Countertop-Ovens-Due-to-Burn-Hazard (last accessed October 13, 2025)
[5] *Id.*
[6] https://recall.oster.com/ (last accessed October 13, 2025)




*Figure 1 – Defendant's Recalled Products*

11. Consumers who purchased the Products learned through the Recall notice that the Products posed a serious safety hazard requiring significant corrective action.

12. Defendant refuses to provide refunds for its defective Products. Instead, Defendant's only offer is a clip-on magnet to help keep the French doors open. This corrective measure is a proverbial band-aid on a literal burn wound.

13. The Recall also is inconsistent with general industry practices because Defendant failed to offer refunds as an alternative to its jerry-rigged clip-on solution. A refund option would incentivize consumers to surrender their dangerous products pursuant to the Recall, thereby getting more of the dangerous products out of circulation. Defendant has decided not to follow prevailing industry standards. Instead, Defendant implemented a half-hearted Recall that papers over a fire hazard.

14. Accordingly, Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals for equitable relief and to recover damages and restitution for violations of New York General Business Law ("GBL") §§ 349 and 350, unjust enrichment, and breach of implied warranty.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant (including Plaintiff), and (4) there are more than 100 proposed Class members.

16. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed themselves to the laws, rights, and benefits of the State of New York.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a)(1) because many Class Members reside in the Northern District of New York, and throughout the state of New York. Moreover, a substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

18. Plaintiff Ceta Kuntzsch is a citizen of Montgomery County, New York and owns Models TSSTTVFDXL and TSSTTVFDDG. The Product snaps shut immediately when she lets go of the door, and Plaintiff has been burned by the oven and as a result the door unexpectedly snapping shut.

19. Plaintiff purchased both ovens from Walmart and routinely uses them to cook. She has encountered hazardous events from the oven and has been burned. She remains apprehensive that the device could burn her more and does not think the repair kit provided by Sunbeam during the Recall is sufficient to safeguard her. She fears the product could cause harm to herself and/or others.

20. Defendant Sunbeam is a Delaware corporation with its principal place of business

located at Boca Raton, Florida. Defendant designs, manufactures, markets, distributes, advertises, warrants, and sells consumer kitchen appliances, including the Recalled Products, throughout the United States, including in New York. At all relevant times hereto, Defendant created and/or authorized the false and misleading advertising, labeling, and representations regarding the safety and performance of the Products.

## FACTUAL ALLEGATIONS

### A. Defendant Manufactured, Distributed, Marketed, and Sold the Recalled Products

21. Defendant manufactured, distributed, marketed, and sold the Products. The Products were specifically marketed as a safe, convenient, and easy-to-use countertop oven suitable for everyday household cooking.

22. Defendant's product page represents that its products are safe and easy to use, which are misleading by omission. It touts "Elegant French Doors open with a single pull, making inserting and removing meals easy and convenient," and repeats that the "French doors open with a single pull, making it easy to insert and remove food."[7]

23. Defendant's Products sold through third-party retailers, such as on Amazon.com, also highlight the ease of use of the Products subject to the recall as seen below.[8]

[7] https://www.oster.com/cooking-appliances/countertop-ovens/oster-manual-french-door-air-fry-oven/SAP_2142004.html (last accessed October 13, 2025).
[8] https://www.amazon.com/Oster-Digital-French-Door-Oven/dp/B08MXSZHB5?th=1 (last accessed October 16, 2025)




*Figure 2 – Image from Amazon website selling Oster Air Fryer Oven*

24. Additionally, Defendant engaged in extensive marketing efforts to promote the purported benefits of the Product. Defendant and its retail partners featured the Product in video advertisements, including a QVC segment highlighting the "French door" design as a key selling point, emphasizing one-handed operation, easier access to the cooking cavity, and convenient placement and removal of food.[9]

**B. <u>Defendant's Product Design is Hazardous and Exposes User's to Potential Burns</u>**

25. In reality, Defendant's Products pose a serious burn hazard, as the doors can suddenly and forcefully close, trapping users' hands and arms, causing injury and burns.

26. Defendant's explicit representation that the "French doors . . . mak[e] it easy to [] remove food" is false and misleading.

[9] https://www.youtube.com/watch?v=0cgBWUfvDWs (last accessed October 13, 2025).

27. Furthermore, nowhere does the product page or manual disclose the material risk that the doors can suddenly and forcefully close while a user is inserting or removing food, thus creating a foreseeable burn hazard.

28. This glaring omission further renders the explicit representation that the doors "mak[e] it easy to insert and remove food" false and misleading. Defendant did not have to make these representations about the French doors' ease-of-use, but because they did, Defendant had a duty to disclose that the doors do not, in fact, "mak[e] it easy to [] remove food," and that they instead pose an unreasonable risk of closing on consumers and burning their hands.

29. CPSC's September 25, 2025 Recall announcement states that Sunbeam received at least 95 reports of the door unexpectedly closing, causing burn injuries to the Oven's users, including second degree burns.[10] Consumers purchased and utilized these Ovens under the belief that they were safe for use and instead, they have been subjected to the risks of harm and burns.

30. Plaintiff was also burned by the Oven due to the door swinging shut while she attempted to use it as intended.

31. Defendant's Products were manufactured and distributed with doors that lacked sufficient holding force or secure hinge mechanisms, permitting them to swing closed unexpectedly during use. Despite the existence of this hazard, the Product manuals[11], packaging, and online materials did not include any warnings that the doors might suddenly close or cause injury**.**

32. Prior to the recall announcement, multiple consumers publicly reviewed Defendant's Products, complaining that the doors to the Ovens were defective.

---

[10] *Id.*

[11] https://newellbrands.imgix.net/a38f4fbe-f0f5-3f95-9b72-22bea77a2428/a38f4fbe-f0f5-3f95-9b72-22bea77a2428.pdf (last accessed October 13, 2025)

33. For example, a review from 2022, noted that one of the Products apart of the Recall, was "just dangerous" and warned that, "[t]he french doors cannot be opened with one hand and must be opened completely on both sides, or they will slam shut on you. Hard to do and super dangerous to attempt when the unit is on." [12]



Tons of potential, but honestly just dangerous

JessicaColorado

3 years ago

We purchased this model about 6 months ago now and wanted to give it a fair shake before reviewing, because we LOVE Oster products, have products passed down from the 80s that still work and have never had complaints about any of our Osters, but after 6 months we're still not fans of this product. First issue, which I should have noticed before buying - no pre-heat function, no alert to let you know when it is up to temp, and no light. Both of those I could get around. The french doors also let heat escape from the front which leads to inconsistent temp overall thus inconsistent cooking and super hot handles. This product is impossible to open, even just to check the color of the food (because, remember, no light) without a glove. The next 2 issues are safety-related and the reason I would absolutely not recommend this product. The french doors cannot be opened with one hand and must be opened completely on both sides or they will slam shut on you. Hard to do and super dangerous to attempt when the unit is on. Additionally, the exterior of the unit gets very hot, like burned my hand to the point of blistering when I accidentally grazed the side of the unit near the back. This happened after 30 days so I was unable to return to Walmart (where I purchased) or I absolutely would have and would never have looked back. Since that incident, I haven't used the device and don't intend to use it again.

No, I do not recommend this product.

Helpful? (1) (0) Report

Value 1.0

Quality 1.0

*Figure 3 – Screenshot of Negative Review from Defendant's Website*

34. Another review published in 2024 rated the Product as 1-star, stated that " [the] doors don't stay open and will close on you. Resulting in burns."[13] Another review posted the same year, also noted that they had been burned numerous times due to the doors closing while removing food. *See* below.

[12] https://www.oster.com/cooking-appliances/countertop-ovens/oster-manual-french-door-air-fry-oven/SAP_2142004.html (last accessed October 13, 2025)
[13] https://www.oster.com/cooking-appliances/countertop-ovens/oster-manual-french-door-air-fry-oven/SAP_2142004.html (last accessed October 13, 2025)


Doors will close and burn you

Another dissatisfied

a year ago

I have been burned several times by the doors closing while I am removing the food. This appliance sucks. Don't waste your money!!!

No, I do not recommend this product.

Helpful? (0) (0) Report

Value 1.0

Quality 1.0

Response from Oster: a year ago

Customer Care

Hello!

Thank you very much for your feedback on our MANUAL FRENCH DOOR OVEN WITH AIR FRY! We are very sorry to hear about your experience and we sincerely apologize for the inconvenience caused! It should not have happened!

We would like to have a chance to assist you further, that is why we strongly encourage you to reach out to us directly via our official "Contact Us" page.

Thank you!

Oster Consumer Care

0 Comments Add Comment

Burn Warning

Kbates

a year ago

The doors don't stay open and will close on you. Resulting in burns. Oven does not cook evenly.

No, I do not recommend this product.

Helpful? (0) (0) Report

Value 1.0

Quality 1.0

*Figure 4 – Screenshot of Negative Review from Defendant's Website*

35. Many of the negative reviews include contemporaneous responses from Oster, apologizing and inviting the consumers to contact Customer Care. Thus, demonstrating that Oster had reviewed and acknowledged the consumer's complaints.

36. The reviews citing that the doors close during use, coupled with burns, mirrors the hazard later identified in the Recall. Despite some of their reviews being over three years old, Defendant did nothing to correct the hazard or warn its users of the potential risks associated with using their Product until the Recall was announced.

37. Thus, Defendant knew, or should have known, that the advertising and labeling of its Products were false and misleading as well as misrepresented material facts concerning safety.

38. Defendant knew, or should have known, that the representations and statements made through its labeling and advertising would mislead consumers to purchase the Products instead of competitors' cheaper products based on a false belief that the Products were safe for use.

39. Had Defendant disclosed the true risks of the Products, Plaintiff would not have purchased the Products, or would have paid less for it, had the Products been truthfully and accurately labeled.

## C. The Product Recall

40. On September 25, 2025, Sunbeam announced a recall of approximately 1,290,000 Products.[14] The Recall followed at least 95 reported incidents and multiple burn injuries, including second-degree burns, have been reported to date. The U.S. Consumer Product Safety Commission concluded that the Ovens posed a significant risk of causing injuries and burn hazards.

41. To address the Product defect, Sunbeam advised its consumers to stop using the recalled countertop ovens immediately and contact Sunbeam Products Inc. to receive a repair kit, which includes a Door Assist Magnet—a clip on devise that attempts to prevent the defective doors from swinging shut using a magnet. In order to obtain the repair kit, consumers have to go on to Defendant's website for the Recall, confirm their model and submit their personal information, including name, email, phone number, and mailing address.[15]

42. Consumers who purchased the Products learned through the Recall notice that the Products posed a serious and undisclosed safety hazard. Rather than providing a true remedy, Defendant sought a cheap out by devising a Recall that isn't a Recall at all. Instead, consumers who participate in the Recall are expected to keep their defective and dangerous Oster Ovens with French doors designed with defective hinge mechanisms prone to closing on consumers attempting to use the Ovens as intended. Instead, to paper over a major fire hazard, Defendant's jerry-rigged

[14] https://www.cpsc.gov/Recalls/2025/Sunbeam-Products-Recalls-More-than-One-Million-Oster-French-Door-Countertop-Ovens-Due-to-Burn-Hazard (last accessed October 13, 2025)
[15] https://recall.oster.com/ (last accessed October 13, 2025)

solution is a clip-on pin that attempts to prevent the still-defective hinge mechanism from closing shut with a magnet.

43. This clip-on magnet is an ineffective band-aid for a severe burn hazard. It does absolutely nothing to address the Defect in the Products. Consumers who participate in the Recall must keep their defective Ovens prone to closing shut and burning them, and have to hope that a clip-on magnet will reliably hold the defective Doors open and prevent the defective hinges from slamming shut—as they are prone to do.

44. The Recall fails to provide sufficient reimbursement for the premium prices consumers paid in reliance on Defendant's misrepresentations and omissions. First, it saddles consumers with a defective, dangerous Product that is not changed in any from its defective design. Instead, consumers are expected to use a clip-on magnet and hope it holds the defective Doors open. Second, many consumers may have disposed of their Product given that it was dangerous, that it posed serious burn hazards, and that the Recall issued on the Product instructed consumers to stop using the Product. The Recall is fatally flawed because it does not give consumers the option to obtain a cash refund, instead only offering a clip-on magnet meant to hold open a defective door prone to slamming shut—a clip-on magnet, it bears emphasis, provided by the same company than designed, manufactured, and sold dangerously defective doors prone to slamming shut and burning consumers. Given Sunbeam's initial defective design and its dishonesty in marketing the Product, Plaintiff and other consumers cannot be blamed for having little faith in Defendant's jerry-rigged solution.

**<u>CLASS ACTION ALLEGATIONS</u>**

45. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

46. The proposed Class is defined as follows:

> **Nationwide Class:** All persons within the United States who purchased Defendant's Recalled Products, including their models, TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF, and TSSTTVFDDAF.
>
> **New York subclass:** All persons within the state of New York who purchased Defendant's Recalled Products, including their models, TSSTTVFDXL, TSSTTVFDDG, TSSTTVFDMAF, and TSSTTVFDDAF.

47. Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

48. *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

49. *Commonality*: Questions of law or fact common to the Class include, without limitation:

a. Whether the Products in question were defective;

b. Whether the defective nature of the Products would be considered material;

c. Whether the defective nature of the Products constitute an unreasonable safety risk;

d. Whether Defendant knew or should have known about the defective nature of the Products;

e. Whether Defendant had a duty to disclose, prior to purchase, the defective nature of the Products to consumers;

f. Whether the defective nature of the products has decreased the value of the Products;

g. Whether Defendant's conduct constitutes an unlawful breach of the implied warranty of merchantability;

h. Whether Defendant's conduct constitutes an unlawful breach of express warranties;

i. Whether Defendant's fraudulently omitted material information in its interactions with consumers;

j. Whether Defendant were unjustly enriched;

k. Whether Plaintiff and Class members are entitled to damages and/or other monetary relief.

50. *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

51. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

52. *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

53. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is

impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

54. *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

55. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

56. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

57. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of New York GBL § 349**
**(On behalf of Plaintiff and the New York Subclass members)**

58. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

60. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant.

61. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

62. Defendant's improper consumer-oriented conduct—including failing to disclose that its Product's doors could unexpectedly close, creating a burning hazard—is misleading in a material way in that it, *inter alia,* induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

63. Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

64. Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

65. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

66. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**<u>SECOND CAUSE OF ACTION</u>**
**Violation of New York GBL § 350**
**(On behalf of Plaintiff and the New York Subclass members)**

67. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

68. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

69. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

70. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it omits disclosure of the potential hazards associated with Products' defected conditions.

71. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, dangerous, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

72. Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

73. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

74. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

75. Defendant made the material omissions described in this Complaint in its advertising and on the Products' packaging and labeling.

76. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

77. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(On behalf of the Plaintiff and the Nationwide Class)**

78. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

79. All preceding paragraphs are incorporated by reference as though fully set forth herein.

80. Defendant represented to Plaintiff and Class members that its Products were reliable, merchantable, and in good repair.

81. The defect caused the Products to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

82. Defendant knew or should have known that its Products could not conform to its representations because of the defect.

83. Defendant mispresented, concealed, and omitted material information concerning the defect.

84. The defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Products.

85. Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff and Class members to purchase their Products at a substantially higher price than what they would otherwise have paid.

86. Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Products.

87. Plaintiff and Class members would not have purchased the Products if they knew of the defect, or they would have only paid substantially less.

88. Plaintiff and Class members conferred substantial benefits on Defendant by purchasing defective Products at a premium without receiving a product that conformed to Defendant's representations.

89. Defendant knowingly and willingly accepted and enjoyed these benefits.

90. Defendant's retention of these benefits would be inequitable because Defendant obtained benefits to the detriment of Plaintiff and Class members when Plaintiff and Class members did not obtain their promised benefits.

91. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members are entitled to restitution.

## FOURTH CAUSE OF ACTION
**Negligence**
**(on behalf of Plaintiff and the Nationwide Class)**

92. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein

93. At all times relevant, Defendant had a duty to provide Plaintiff and the other members of the Class with safe Products.

94. Defendant breached this duty by failing to ensure the safety of its Products.

95. As a result of the Recall, Plaintiff and the other Class Members were harmed in that they suffered economic injury and lost the benefit of the bargain relating to their purchase price of Defendant's Products.

96. Defendant's breach of its duty caused Plaintiff and the other Class Members damages both proximately and factually.

97. Had Defendant properly tested and manufactured its Products, and properly examined and tested its Products prior to sale, Plaintiff and the other Class Members would not have been injured and/or damaged as they would not have purchased unsafe products.

98. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been injured and sustained damages.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(on behalf of Plaintiff and the Nationwide Class)**

99. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein

100. At all times relevant hereto, Sunbeam designed, manufactured, produced, promoted, marketed and sold the Products.

101. Sunbeam, as the manufacturer, marketer, distributor, and seller, expressly warranted that the Products had "easy-to-use" French doors that "mak[e] it easy to . . . remove food." However, the Products' defectively designed and manufactured doors were never easy-to-use, and never made it easy to remove food. In reality, the French doors are defectively prone to slam shut, burning consumers hands and arms, and thus the Products created an unreasonable severe burn hazard when simply using the Product as intended.

102. Sunbeam's express warranties, and its affirmations of fact and promises made to Plaintiff and Class Members regarding the Products became part of the basis of the bargain between Defendant and Plaintiff and the Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

103. The Products do not conform to the express warranty because the representations are false or misleading.

104. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products; (b) they paid a substantial price premium for the Products based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

105. All conditions precedent to Defendant's liability under this warranty and/or contract were performed by Plaintiff and the Class when they purchased the Products and used the Products as directed.

106. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

107. Defendant's attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

a. Defendant knowingly sold a defective product without informing consumers about the defect;

b. The time limits contained in Defendant's warranty period are unconscionable and inadequate to protect Plaintiff and members of the Class;

c. Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendant; and

d. A gross disparity in bargaining power existed between the parties.

108. Defendant was given sufficient notice of its breach of notice *inter alia* from numerous consumer complaints and through its own Recall of the Products for the Defect at issue.

## SIXTH CAUSE OF ACTION
**Breach of Implied Warranty**
**(on behalf of Plaintiff and the Nationwide Class)**

109. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein

110. The sale of Defendant's Products created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[16]

111. The defect caused the Products to be unmerchantable because the Products cannot perform their essential functions according to what the average purchaser would reasonably expect.

112. The warranty covers the defect and any damage proximately caused by the defect.

113. Defendant breached the warranty because it was unwilling or unable to remedy the defect within a reasonable time, and any attempt to remedy the defect has been ineffective.

114. Defendant's breach deprived Plaintiff and Class members of the benefit of the bargain.

115. Defendant's attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

---

[16] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

a. Defendant knowingly sold a defective product without informing consumers about the defect;

b. The time limits contained in Defendant's warranty period are unconscionable and inadequate to protect Plaintiff and members of the Class;

c. Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendant; and

d. A gross disparity in bargaining power existed between the parties.

116. The essential purpose of the warranty failed because Plaintiff and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, so Plaintiff and Class members are entitled to a remedy that is not limited by the terms of the warranty.

117. Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

118. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

119. Defendant was given sufficient notice of its breach of notice *inter alia* from numerous consumer complaints and through its own Recall of the Products for the Defect at issue.

## PRAYER FOR RELIEF

WHEREFORE, the following relief is requested:

a. An order certifying this action as a class action.

b. An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

c. An order enjoining Defendant's unlawful conduct.

d. An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e. An award of interest as provided by law, including pre-judgment and post-judgment interest.

f. Such other and further relief as this Court may deem just, equitable, or proper.

Dated: October 22, 2025

Respectfully submitted,

/s/ Jason P. Sultzer_____________________

Jason P. Sultzer, Esq.
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiff and Proposed Class*